USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 9/23/15

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

T.F. and A.F., individually and on behalf of M.F.,    :
                                                      :
                          Plaintiffs,                 :        14cv3401
                                                      :
         -against-                                    :        MEMORANDUM & ORDER
                                                      :
THE NEW YORK CITY DEPARTMENT OF                       :
EDUCATION,                                            :
                                                      :
                          Defendant.                  :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

WILLIAM H. PAULEY III, District Judge:

   Plaintiffs T.F. and A.F. bring this action under the Individuals with Disabilities

Education Act ("IDEA") on behalf of their daughter, M.F.  They seek reversal of the final

administrative decision rendered by a New York State Review Officer ("SRO") affirming the

decision of an Impartial Hearing Officer ("IHO").  Both concluded that the New York City

Department of Education ("DOE") offered M.F. a Free Appropriate Public Education ("FAPE"),

and that M.F.'s parents were not entitled to reimbursement for her private school tuition for the

2011–12 school year.  All parties move for summary judgment.  For the following reasons, the

DOE's motion for summary judgment is granted and Plaintiffs' motion is denied.

## BACKGROUND

   M.F. has Down's Syndrome.  She experiences language and articulation delays,

attentional deficits, and has difficulty initiating and completing tasks.  (DOE Ex. 7.)  She also

struggles with balance and coordination, and suffers from significant hearing loss.  (Complaint at

7–8; Complaint Ex. A at 4.)

   M.F. received early interventional services and attended public schools through

1

first grade, with additional related services for physical therapy, occupational therapy, and speech therapy. (IHO Hearing Tr. at 914–16.) Starting in the second grade and continuing through the ninth grade, M.F. attended the Seton Foundation for Learning on Staten Island. (IHO Hearing Tr. at 917.)

For the 2010–11 school year, the DOE prepared an Individualized Education Plan ("IEP") for M.F., which recommended a 12:1:1 placement in a community school. (DOE Ex. 3 at 21.) Plaintiffs challenged that placement and enrolled M.F. at the Cooke Center for Learning and Development, a private school for students with special needs. Litigation ensued. On December 6, 2011, the DOE settled with Plaintiffs and agreed to pay a substantial portion of M.F.'s Cooke Center tuition for the 2010–11 school year. (See ECF No. 27 at 1.)

Meanwhile, on February 10, 2011, the DOE's Committee on Special Education ("CSE") met to prepare an IEP for M.F.'s 2011–12 school year. (DOE Ex. 8.) The IEP meeting was attended by A.F., two representatives from the DOE, and representatives from the Cooke Center. (DOE Ex. 4 at 2.)

The IEP that emerged after the meeting contemplated a 12-month program in a specialized District 75 school with a 12:1:1 ratio for M.F.[1] (DOE Ex. 4.) The IEP also recommended related services, including speech language therapy, occupational therapy, hearing services, counseling, alternate assessments, adaptive physical education, special transportation, and a hearing amplifier. (DOE Ex. 4.). Thereafter, A.F. notified the CSE that the meeting minutes omitted certain information, that M.F.'s reading level was incorrect, that the IEP's goals

---

[1] A District 75 school provides educational and behavior support programs for students who are on the autism spectrum, have significant cognitive delays, are severely emotionally challenged, sensory impaired and/or disabled. See M.H. v. New York City Dep't of Education, 685 F.3d 217, 234 n.9 (2d Cir. 2012).

may not be appropriate for the start of the school year, and that M.F. needed more individual professional support than was proposed. (Parents' Ex. D.) The DOE did not respond to the issues raised by A.F.

In June 2011, the DOE informed Plaintiffs that M.F.'s recommended placement was P752Q at Queens Transition Center. (DOE Ex. 9.) A.F. visited P752Q and then set forth her concerns in a letter to the CSE. (DOE Ex. 11.) The DOE did not respond to A.F.'s letter.

In October 2011, A.F. visited P75Q2 for a second time. A Cooke Center administrator accompanied her. (Complaint ¶ 74.) Following that second visit, A.F. reiterated to the DOE the concerns she had expressed in her June 2011 letter. (DOE Ex. 12.) Again, the DOE did not respond.

In February 2012, Plaintiffs filed a due process complaint, contending that the DOE denied M.F. a FAPE for the 2011–12 school year. (ECF No. 27.) In September 2013, after a five-day hearing, the IHO issued her findings. (Complaint Ex. A.) The IHO concluded that the DOE provided a FAPE for the 2011–12 school year, and that the Cooke Center was not an appropriate placement for M.F. (Complaint Ex. A at 28–31.) Specifically, the IHO determined that M.F.'s Cooke Center teachers had an adequate opportunity to participate in the February 2011 IEP meeting, even though some participated by telephone. (Complaint Ex. A at 23–24.) The IHO also concluded that the CSE had sufficient evaluative material to prepare M.F.'s IEP, although they did not conduct an updated social history or functional vocational assessment. (Complaint Ex. A at 24.)

Based on a December 2010 Cooke Center progress report, a classroom observation conducted by the CSE Chair of the 2011 IEP meeting, a psychoeducational

evaluation from October 2009, and the prior IEP, the IHO found that the CSE had sufficient documentation to develop the IEP. (Complaint Ex. A at 24–25.) While the psychoeducational evaluation was more than a year old, the IHO concluded it was timely under State regulations and nothing in the record warranted a reevaluation. Moreover, Plaintiffs never requested one. (Complaint Ex. A at 24.) The IHO also found that the IEP prepared M.F. to transition to post-secondary life. Based on input from the Cooke Center staff, the IHO concluded that a Functional Behavioral Assessment ("FBA") and a Behavioral Intervention Plan ("BIP") were not required. (Complaint Ex. A at 26.)

The IHO also found that the academic and related services goals were discussed with Plaintiffs and the Cooke Center staff. (Complaint Ex. A at 26–27.) Finally, the IHO held that the 12:1:1 placement at P752Q was appropriate, and that the IEP did not need to address "grouping" of students. The IHO credited the testimony of the Assistant Principal of P752Q who testified that M.F. would have received the services identified in her IEP and would have been placed in an appropriate classroom at P752Q. (Complaint Ex. A at 27–28.)

Plaintiffs appealed the IHO's decision to the SRO. The SRO affirmed the IHO's conclusion that the DOE had offered a FAPE, and that reimbursement was not required. (Complaint Ex. B.) The SRO concluded that the 12:1:1 placement in a specialized school was appropriate. (Complaint Ex. B at 10–12.) And although the DOE had not performed a vocational assessment, that failure did not result in the denial of a FAPE because the transition plan in the IEP was created with input from the Cooke Center staff and information from the Cooke Center progress report. (Complaint Ex. B at 13–14.) The SRO noted further that, while the DOE failed to conduct a vocational assessment and the transition plan contained some

deficiencies, those inadequacies did not invalidate the transition plan or the IEP, as a whole. (Complaint Ex. B at 13–14.)

The SRO addressed the Plaintiffs' claims that P752Q was an inadequate placement, concluding that Plaintiffs' "speculation that the school district will not adequately adhere to the IEP is not an appropriate basis for unilateral placement." (Complaint Ex. B at 14 (citing R.E. v. New York City Dep't of Educ., 694 F.3d 167, 195 (2d Cir. 2012))). Finally, the SRO concluded that the district offered M.F. a FAPE for the 2011–12 school year, and declined to review the IHO's determinations regarding the appropriateness of the Cooke Center or other equitable considerations.

## LEGAL STANDARD

"The role of the federal courts in reviewing state educational decisions under the IDEA is circumscribed." C.F. ex rel. R.F. v. New York City Dep't of Educ., 746 F.3d 68, 77 (2d Cir. 2014) (internal citations omitted). "While the district court must base its decision on the preponderance of the evidence, it must give due weight to the administrative proceedings, mindful that the judiciary generally lacks the specialized knowledge and experience necessary to resolve persistent and difficult questions of educational policy." T.Y. v. N.Y.C. Dep't of Educ., 584 F.3d 412, 417 (2d Cir. 2009) (citation omitted). But judicial deference is not absolute. "In many determinations made by administrative officers, the district court's analysis will hinge on the kinds of considerations that normally determine whether any particular judgment is persuasive, for example whether the decision being reviewed is well-reasoned, and whether it was based on substantially greater familiarity with the evidence and the witnesses than the reviewing court." M.H. v. N.Y.C. Dep't of Educ., 685 F.3d 217, 244 (2d Cir. 2012).

5

New York law allocates the burden of persuasion and production to the school district in an impartial hearing. See N.Y. Educ. Law § 4404(1)(c). But "[b]ecause the [SRO] in the case[ ] at bar concluded that the IEP[ ][was] proper, and the courts are bound to exhibit deference to that decision, the burden of demonstrating that the ... [SRO] erred is properly understood to fall on the plaintiffs." M.H., 685 F.3d at 225 n.3. And to the extent a court "must determine whether the state administrative decisions were supported by a preponderance of the evidence, which party bore the burden of persuasion in the state review scheme is only relevant if the evidence was in equipoise." M.H., 685 F.3d at 225 n.3.

## DISCUSSION

Reimbursement for private school tuition is appropriate if the evidence shows "(1) that the proposed IEP was inadequate to afford the child an appropriate public education, and (2) that the private education services obtained by the parents were appropriate to the child's needs." Walczak v. Fla. Union Free Sch. Dist., 142 F.3d 119, 129 (2d Cir. 1998) (citing Sch. Comm. of Burlington v. Dep't of Educ. of Mass., 471 U.S. 359, 370 (1985)); Florence Cnty. Sch. Dist. Four v. Carter, 510 U.S. 7, 12–14 (1993)). Parents must also show "that the equities favor them." R.E., 694 F.3d at 185 (citing Cerra v. Pawling Cent. Sch. Dist., 427 F.3d 186, 192 (2d Cir. 2005)). In determining whether the proposed IEP was inadequate, courts examine (1) whether the IEP was developed according to the IDEA's procedural requirements and (2) whether the IEP is substantively appropriate in that it is "reasonably calculated to enable the child to receive educational benefits." A.C. ex rel. M.C. v. Bd. of Educ. of Chappaqua Cent. Sch. Dist., 553 F.3d 165, 171 (2d Cir. 2009) (internal quotations and citations omitted).

I.     Procedural Compliance

      Plaintiffs argue that the CSE violated 34 C.F.R. § 104.35(a) by recommending a "significant change in placement"—from a 12:1:1 in a community school to a 12:1:1 in a District 75 school—without conducting an updated evaluation of M.F.  The SRO concluded that the change to a District 75 school was not a significant change from M.F.'s Cooke Center placement. The SRO reasoned that both placements involved a 12:1:1 ratio with additional related services at schools specializing in students with special needs.  Therefore, an updated evaluation was not necessary, and in any event, the CSE had sufficient evaluative material to develop the IEP. (Complaint Ex. B at 10–12.)

      Plaintiffs fail to demonstrate that the evaluative materials were inadequate or that the purported procedural errors would have changed the CSE's conclusion.  As both the IHO and SRO found, the CSE is not required to conduct updated evaluations where it has sufficient evaluative materials reflecting the student's present level of performance.  (Complaint Ex. A at 24–25; Ex. B at 10–14.)  Here, the CSE relied on a Cooke Center progress report prepared two months prior to the IEP meeting, a classroom observation of M.F. by the CSE Chair, a psychoeducational evaluation conducted sixteen months earlier, and the preceding year's IEP. (DOE Exs. 3, 6, 7, 8.)  These materials were sufficient to provide relevant information in determining the educational needs of M.F.

      Even assuming that the failure to conduct an updated evaluation constituted a procedural error, there is no evidence that this omission resulted in the denial of a FAPE.  See M.H. v. New York City Dep't of Educ., 685 F.3d 217, 245 (2d Cir. 2012) (noting that "not every procedural error will render an IEP legally inadequate" and relief is warranted only if the alleged

7

procedural inadequacies impeded the child's right to a FAPE); <u>D.B. v. N.Y.C. Dep't of Educ.</u>, 966 F. Supp. 2d 315, 331 (S.D.N.Y. 2013) (school district's failure to perform an updated evaluation did not deny a FAPE where the CSE had other "sufficient and accurate information to understand the [s]tudent's present levels of performance").

      The failure to conduct a vocational assessment, in and of itself, does not rise to the level of a FAPE deprivation where the CSE had sufficient information about the student to determine the student's educational needs.  <u>See</u> <u>P.L. v. New York Dep't of Educ.</u>, 56 F. Supp. 3d 147, 160 (E.D.N.Y. 2014) (noting that failure to conduct a vocational assessment "constituted a procedural violation" but that this failure did not result in the denial of a FAPE where the CSE had sufficient evaluative information).  And the failure to update the October 2009 psychoeducational evaluation does not undermine the validity of the FAPE.  An updated psychoeducational evaluation is required only if (1) the school district determines that one is warranted, (2) the parents or teachers request one, or (3) the evaluation in question is three years or older.  8 N.Y. Comp. Codes R. & Regs. tit. § 200.4(b)(4).  None of these factors apply here. This Court declines to upset the IHO and SRO's conclusion that the CSE's use of the October 2009 psychoeducational evaluation—in conjunction with other evaluative materials—was appropriate.

      Finally, Plaintiffs argue that they were denied an adequate opportunity to participate in the CSE meeting.  The IDEA requires that parents of children with disabilities be given an active role in developing their child's IEP.  <u>See</u> 20 U.S.C. § 1415(b)(1); <u>Cerra v. Pawling Cent. Sch. Dist.</u>, 427 F. 3d 186, 193 (2d Cir. 2005).  The IHO concluded that this requirement was satisfied, as A.F. and several teachers and administrators from the Cooke Center

participated in the meeting.  The SRO affirmed that conclusion.  (Complaint Ex. A at 23–24; Ex.
B at 10.).

While A.F. and a Cooke Center administrator testified that they disagreed with a
District 75 placement and challenged many of the goals in M.F.'s IEP, "the fact that the District
staff ultimately disagreed with the opinions of plaintiffs and their outside professionals does not
mean that plaintiffs were denied the opportunity to participate in the development of the IEP, or
that the outcomes of the CSE meetings were pre-determined.  A professional disagreement is not
an IDEA violation."  P.K. v. Bedford Cent. Sch. Dist., 569 F. Supp. 2d 371, 383 (S.D.N.Y.
2008).

II.     Substantive Adequacy

The SRO's conclusion that the DOE provided a 2011–12 FAPE is entitled to
heightened judicial deference, particularly where, as here, the parties introduce no new evidence
that was not before the IHO or the SRO.  M.H., 685 F.3d at 244.  Nevertheless, Plaintiffs
contend that the IHO overlooked a number of substantive inadequacies in the IEP, and that the
SRO "rubber stamped" those findings.

1.     12:1:1 Classroom in a District 75 School

While Plaintiffs challenge the IHO's conclusion that a 12:1:1 specialized school
was appropriate for M.F., they fail to address specifically why that conclusion was erroneous.
Instead, Plaintiffs assert that the Cooke Center's teachers opined that the CSE's recommendation
was ill-suited to address M.F.'s individual needs.  This is insufficient to disturb the
administrative finding that "[g]iven the level of human and material resources to support the
student's management needs included in the February 2011 IEP, it was reasonable for the CSE to

9

conclude that the student's needs" were appropriately met by a 12:1:1 ratio in a District 75 school. (Complaint Ex. B at 12.)

Moreover, the IHO tethered her conclusion to specific findings. First, during the 2010–11 school year, M.F. made incremental progress in a twelve student, two teacher class at the Cooke Center. Second, the CSE considered other 12-month programs for M.F., including 6:1:1, 8:1:1, or 12:1:4 classes, and determined they would be too restrictive, because those settings were typically geared towards students with different types of disabilities. Third, given the level of additional academic and social/emotional strategies and resources included in the February 2011 IEP to address M.F.'s needs, it was reasonable for the CSE to conclude that a 12:1:1 special class in a specialized school was appropriate. (Complaint Ex. B at 10–12.)

2.  M.F.'s Goals and Transition Needs

Plaintiffs argue that the IHO and SRO erred in concluding that the IEP adequately described M.F.'s needs and contained appropriate goals for M.F. They claim that the CSE Chair failed to note M.F.'s deficits, and that the IEP included vague and inappropriate goals. After examining the record, the SRO concluded, however, that the IEP contained appropriate academic and transitional goals. This Court will not substitute its judgment for that of the IHO or the SRO, where the IEP contains extensive information regarding short-term objectives and long-term goals which, as the SRO noted, were consistent with M.F.'s most recent progress report from the Cooke Center. See N.S. v. New York City Dep't of Educ., 13CV7819, 2014 WL 2722967, at *9 (S.D.N.Y. June 16, 2014) (rejecting argument that the "IEP's goals were too vague and lacked meaningful measurements" and agreeing with the SRO that goals were adequate where they

"contain[ed] sufficiently detailed information regarding the conditions under which each objective was to be performed").

### 3.  Adequacy of P752Q Queens Transition Center

Finally, Plaintiffs challenge the SRO's conclusion that P752Q was an adequate placement for M.F.  After receiving the Final Notice offering a placement at P752Q (DOE Ex. 9), A.F. visited that school twice.  She spoke with several teachers who suggested that P752Q would not be an appropriate placement for M.F. and that P752Q would not implement M.F.'s IEP.  Specifically, they informed her that M.F. would not be eligible to participate in the school's internship program, and was unlikely to receive the related services (such as occupational therapy, physical therapy, speech and language therapy, and others) set forth in her IEP.  (DOE Ex. 11; T.F. and A.F. Ex. C.)

However, in determining that P752Q would be an appropriate placement for M.F., the IHO and SRO relied on the testimony of the Assistant Principal of P752Q.  She testified that the information A.F. received in her visits to P752Q was mistaken, that M.F. would have been able to participate in the school's internship program, that the Special Education Delivery Report (which A.F. cites in both her letters to the DOE) is inaccurate, and that M.F. would receive the related services set forth in her IEP.  (IHO Tr. 394–99; 502–04.)  In short, the Assistant Principal provided the precise information that A.F. had been seeking on two earlier occasions when she wrote to the DOE claiming that her daughter would be denied a FAPE.

The DOE's failure to respond to A.F.'s letters is troubling.  At oral argument, counsel for the DOE characterized the DOE's failure to respond to A.F.'s letters as a "habit that needs to be fixed."  (Feb. 6, 2015 Transcript at 21:9.)  While the procedure for implementation of

11

a FAPE contemplates an iterative process for the development of an IEP, the DOE appears to ignore concerns articulated by parents about offered placements. This "habit" undermines the IDEA and is unfair to the parents of disabled children.

When parents unilaterally enroll their child in a private school, district judges have been divided on the question of whether parents may offer testimony that the proposed placement would have failed to implement the IEP. (Complaint Ex. B at 14–16.) Some judges have held that parents may not introduce testimony regarding the inadequacy of the proposed placement, reasoning that the "DOE's choice of school, rather than the IEP itself, is appropriate only in a later proceeding to show that the child was denied a free and appropriate education because necessary services included in the IEP were not provided in practice." See, e.g., E.E. v. New York City Dep't of Educ., 13CV6709, 2014 WL 4332092, *10 (S.D.N.Y. Aug. 21, 2014). Others have allowed parents to introduce evidence regarding the inadequacy of the proposed placement, where the parents' evidence demonstrated that the assigned placement would not have implemented the IEP. See, e.g., Scott ex rel. C.S. C. New York City Dep't of Educ., 6 F. Supp. 3d 424 (S.D.N.Y. 2014).

However, as the Second Circuit recently opined, prospective challenges to a proposed placement school's capacity to implement a child's IEP are not foreclosed in all circumstances. "To conclude otherwise would require parents to send their child to a facially deficient placement school prior to challenging that school's capacity to implement their child's IEP," which would be "antithetical" to the IDEA's reimbursement process. See M.O. v. New York City Dep't of Educ., 793 F.3d 236, 244–45 (2d Cir. 2015). But such challenges "cannot be based on mere speculation." M.O., 793 F.3d at 244; see also R.E. v. New York City Dep't of

Educ., 694 F.3d 167, 195 (2d Cir. 2012) ("Speculation that the school district will not adequately adhere to the IEP is not an appropriate basis for unilateral placement."). Even if there is some evidence to suggest that other students at the DOE's proposed placement have not received all of the services in their IEP, "a parent must offer something more than mere speculation that the same problem would present itself in her child's case in order to be eligible for tuition reimbursement." See N.S. v. New York City Dep't. of Educ., 13CV7819, 2014 WL 2722967, at *13 (S.D.N.Y. June 16, 2014). In this case, A.F. visited P752Q and advised the DOE of the reasons she believed that it was not a proper placement for her daughter. But her allegations do not rise above "speculation" that P752Q would have been inadequate. Plaintiffs have not pointed to any definitive evidence that M.F. would not have received the services set forth in her IEP.

CONCLUSION

For the foregoing reasons, the New York City Department of Education's motion for summary judgment dismissing this case is granted. And Plaintiffs' motion for summary judgment is denied. The Clerk of Court is directed to terminate the motions pending at ECF Nos. 20 and 22 and mark this case as closed.

Dated: September 23, 2015
New York, New York

SO ORDERED:

WILLIAM H. PAULEY III
U.S.D.J.

*All Counsel of Record.*